# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                     Cr. No. 20-1848 KWR/KK

ESTEBAN GALLARDO,

    Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on Defendant Esteban Gallardo's Motion to Suppress (Doc. 29) ("Motion"), filed February 8, 2021. In his Motion, Defendant asks the Court to suppress "all evidence seized from his backpack on September 9, 2020," as well as "all fruits thereof." (*Id.* at 1.) The Government responded in opposition to the Motion on February 22, 2021, and Defendant timely replied in support of it on March 15, 2021. (Docs. 31, 34, 35.) By an Order of Reference filed May 4, 2021, this matter was referred to the undersigned to conduct hearings as warranted, and to perform any legal analysis required to recommend an ultimate disposition of the Motion. (Doc. 36.) The Court held an evidentiary hearing on the Motion on May 28, 2021. Having considered the evidence presented, the parties' submissions, the record, and the relevant law, and being otherwise fully advised, the Court proposes to FIND that Defendant's Motion is not well taken and should be DENIED.

### *I. Proposed Factual Findings*

On Wednesday, September 9, 2020, Albuquerque Police Department Officer Mario Perez observed a silver four-door Toyota sedan in the parking lot of the Motel 6 at 1701 University Boulevard, Northeast, Albuquerque, New Mexico. A male later identified as Defendant Esteban

Gallardo got into the vehicle and drove out of the parking lot. As he did so, Officer Perez ran the vehicle's license plate and determined that the vehicle had been reported stolen. He relayed this information to other officers by radio and learned from Albuquerque Police Department Detective Daniel Yurcisin of registered owner Amanda Casaus' report that Defendant had refused to return the vehicle to her after she loaned it to him. Officer Perez called Ms. Casaus to confirm that the vehicle was still stolen. She did not answer but called him back almost immediately and told him that she had recovered the vehicle.

Meanwhile, Defendant had driven to a few different locations, including a gas station, while Officer Perez followed him in an undercover vehicle. At I-40 and University, Albuquerque Police Department Detective Rachel Nakamura also began following Defendant, but in a marked police unit. Officer Perez was speaking with Ms. Casaus, and Detective Nakamura was pointing a green laser at the back of the subject vehicle in order to shoot a tracking device onto it, when Defendant pulled back into the Motel 6 parking lot.

By this time Officer Perez had learned from another officer that there was an outstanding felony warrant for Defendant's arrest. This information and a photograph of Defendant were relayed by radio to all law enforcement officers involved in the investigation. At that point, the object of the investigation shifted from the reported auto theft to the possible execution of the arrest warrant.

At the Motel 6, Officer Perez observed a woman later identified as Ms. Casaus get into the silver Toyota with Defendant. Together they left the motel and proceeded south on University Boulevard before turning into the parking lot of an office building. At the evidentiary hearing, Detectives Nakamura and Yurcisin confirmed that the building in question was occupied by Camp Fire New Mexico, which is located at 1613 University Boulevard, Northeast. *See*

https://www.campfireabq.org/contact-us/ (last visited Jun. 3, 2021). At the time of the incident, however, officers believed they were at 1609 University Boulevard, Northeast, which is actually located directly behind the building at issue and is occupied by New Mexico Donor Services. *See* https://donatelifenm.org/home/contact-us/ (last visited Jun. 3, 2021).

Detective Yurcisin observed the silver Toyota pull into Camp Fire New Mexico's driveway and park on the south side of the building. There were not many other vehicles parked in the lot at that time. Detective Yurcisin, who was driving an unmarked vehicle, pulled into a parking lot just south of the lot in which the subject vehicle had parked. From where Detective Yurcisin parked, he had an unobstructed view of the subject vehicle and anyone who exited it. He saw Defendant and Ms. Casaus get out and change places in the vehicle, so that Ms. Casaus was in the driver's seat and Defendant was in the front passenger seat. He then saw Defendant exit the vehicle with a dog, which he walked to a dirt area west of the building. As Defendant did so, Detective Yurcisin was able to clearly observe Defendant's build, height, weight, and face and to confirm that Defendant matched his latest booking photograph except that he had "a little tattoo above his right eyebrow" that was not present in the photograph. (Doc. 40, Ex. 1.) Defendant then walked back to the vehicle, returned the dog to the back seat, and got back into the passenger seat.

Less than a minute later, as Detective Yurcisin continued to watch, Defendant got out of the vehicle once more and threw a light gray backpack with black trim into a row of evergreen bushes planted between the parking lot and the sidewalk next to the building. Officer Yurcisin radioed to the other officers that Defendant had just "ditched" the backpack. (*Id.*) Immediately after Defendant threw the backpack into the bushes, he got back into the silver Toyota and Ms.

Casaus drove it out of the parking lot and onto University Boulevard. The vehicle then proceeded south to the Circle K at the intersection of University Boulevard and Odelia Road, Northeast.[1]

Detective Nakamura drove to 1613 University Boulevard just after Defendant and Ms. Casaus left. Detective Yurcisin directed her to the bushes where Defendant had left the backpack, and she saw it sitting "literally right on top of" them. The bushes were a little lower than her chest, and the backpack was visible from where she was standing in the parking lot. It was midday on a weekday; there were other vehicles besides Detective Nakamura's in the parking lot; and, there was traffic driving by on University Boulevard. Defendant and Ms. Casaus had left the premises and were not in sight, and nothing and no one restricted Detective Nakamura's access to the backpack.

Detective Nakamura grabbed the backpack, set it on the pavement, and opened it. It was neither locked nor zipped closed, and she opened it because she had heard Detective Yurcisin relay that Defendant had ditched it so she treated it as abandoned property. She did not speak to Defendant before she opened it. Detective Nakamura carried the backpack back to her vehicle, opened it again, and reached into it briefly. Observing a gun inside, she radioed to other officers to be careful. She then proceeded to the Circle K with the backpack.

At the Circle K, a male law enforcement officer[2] approached the silver Toyota while it was parked by a gas pump and made contact with Defendant and Ms. Casaus. Defendant identified himself by name. Ms. Casaus provided her driver's license and told the officer she was the vehicle's registered owner, she had tried to report it was no longer stolen, and a police officer had

---

[1] Detective Nakamura testified that the Circle K in question is at the intersection of University Boulevard and Indian School Road, Northeast. However, Indian School Road, Northeast, becomes Odelia Road, Northeast, at that intersection.

[2] The Government's response brief indicates that this officer was Brandon Forsberg; however, there is no evidence in the record to confirm the officer's name. (*See* Doc. 31 at 4-5.)

"just called" her about it. (Doc. 40, Ex. 1.) The officer returned to his vehicle to confirm that Ms. Casaus owned the vehicle, reporting to other officers his observation that the tattoo above Defendant's eyebrow was "fresh." (*Id.*) As he did so, Detective Nakamura arrived at the Circle K and searched the backpack, finding two loaded guns inside. The male officer determined that one of the guns had been reported stolen.

Officers arrested Defendant on his outstanding warrant and found what appeared to be controlled substances on his person. After Defendant was arrested, Detective Nakamura searched the backpack more thoroughly and located a gallon-sized bag of a crystal-like substance she believed to be methamphetamine, as well as other items that appeared to be controlled substances and drug paraphernalia. The Government has alleged that when officers later documented the backpack's contents, it was found to contain 113 gross grams of a white crystal substance that field tested positive for methamphetamine, 31 blue pills that resembled counterfeit oxycodone pills containing fentanyl, and two functional handguns.[3] (Doc. 31 at 7.) At no time on September 9, 2020 did any law enforcement officer obtain a warrant to search or seize the backpack.

New Mexico State Police Officer Jerry Santana interviewed Ms. Casaus and Defendant while they were stopped at the Circle K. After Officer Santana admonished her to be honest, Ms. Casaus admitted that Defendant had thrown his backpack in a bush. Asked if Defendant had known that officers were following him, Ms. Casaus responded that Defendant went to get coffee and when he came back she saw an officer "go through" the Motel 6 and got worried for Defendant because he had warrants. (Doc. 40, Ex. 4.) After telling Officer Santana about how she had reported her car stolen and then recovered it, she added, "he thought maybe because of the car or whatever

---

[3] The Government has offered no evidence in support of these allegations. (*See* Doc. 31 at 7.) The Court therefore considers them only for the purpose of identifying the potential evidence Defendant is seeking to suppress.

that they were following him and then that cop called me so I was honest about it, like he did call me and ask me something so something's going on." (*Id.*)

Before interviewing Defendant, Officer Santana read him his *Miranda* rights from a card and asked if he understood them. Defendant indicated that he did. Officer Santana asked Defendant why he dumped the backpack, and Defendant responded, "[j]ust to get rid of it." (Doc. 40, Ex. 5.) Defendant admitted that there were two loaded guns in the backpack, that he sold methamphetamine, that he was a convicted felon not allowed to possess firearms or ammunition, and that he knew there was an active warrant for his arrest.

## *II. Procedural History*

On September 25, 2020, Defendant was charged by criminal complaint with possession of a firearm in furtherance of a drug trafficking crime, possession of methamphetamine and fentanyl with intent to distribute, and being a felon in possession of a firearm, all on or about September 9, 2020. (Doc. 1 at 1.) Following his initial appearance on October 1, 2020, the Court appointed counsel to represent him. (Docs. 6, 8.) The Court held a preliminary hearing on October 5, 2020, which was continued to October 7, 2020. (Docs. 12, 15, 17.) At the hearing's conclusion, the Court dismissed the fentanyl charge and ordered Defendant to be detained pending trial. (Doc. 17; Doc. 27 at 38.) On October 14, 2020, the Grand Jury issued a two-count indictment charging Defendant with possessing with intent to distribute 50 grams and more of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), and using and carrying a firearm during and in relation to a drug trafficking crime and possessing a firearm in furtherance of such crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). (Doc. 19.) Defendant entered a plea of not guilty at his arraignment on October 21, 2020. (Doc. 21.) Trial in this matter was originally set for December 14, 2020 and has

since been continued five times. (Docs. 24-26, 28, 32, 39.) It is currently set for July 8, 2021. (Doc. 39.)

Defendant filed the Motion presently before the Court on February 8, 2021. (Doc. 29.) The Government filed a response in opposition to the Motion on February 22, 2021, and Defendant filed a reply in support of it on March 15, 2021. (Docs. 31, 35.) On May 26, 2021, the Government filed its Exhibit 3 and lodged its Exhibits 1, 2, 4, and 5 with the Court. (Docs. 40, 41.) The Court held an in-person evidentiary hearing on the Motion on May 28, 2021. At the hearing, Officer Perez, Detective Yurcisin, Detective Nakamura, and Officer Santana testified; the Government's exhibits were admitted without objection; and, four maps of the relevant area were admitted as Defendant's Exhibits A, B, C, and C-2.

### *III. Analysis*

In his Motion, Defendant asks the Court to suppress all of the evidence law enforcement officers seized from his backpack on September 9, 2020, "as well as the fruits thereof, including the testimony and reports of police officers or other law enforcement agents regarding the evidence seized therefrom." (Doc. 29 at 1, 8.) In support of his request, Defendant argues that officers' seizure and search of the backpack violated the Fourth Amendment, because they did not have a warrant or consent to seize or search it, and no exception to the warrant requirement applied. (*See generally id.*) In particular, Defendant argues that he did not abandon the backpack, and thus, though "[t]he Fourth Amendment is not implicated" when police search abandoned property, the seizure and search of his backpack was unconstitutional. (*Id.* at 4-7.)

In response, the Government first asserts that Defendant did in fact abandon the backpack before officers seized and searched it. (Doc. 31 at 7-14.) The Government also argues that, even if Defendant did not abandon the backpack, the officers acted in good faith in seizing and searching

it because they reasonably believed he had. (*Id.* at 14-17.) Finally, the Government contends that the officers would have inevitably discovered the evidence in the backpack during a search incident to arrest or an inventory search following Defendant's arrest on an outstanding felony warrant. (*Id.* at 17-18.)

Defendant, in his reply, counters that the Government cannot meet its burden of showing abandonment by a preponderance of the evidence. (Doc. 35 at 2-5.) Defendant also argues that the good-faith exception to the Fourth Amendment's warrant requirement does not apply here. (*Id.* at 5-6.) Finally, with respect to the inevitable discovery doctrine, Defendant points out that officers could not have discovered the contents of his backpack during a search incident to his arrest because they searched it before he was arrested and he did not have the backpack with him at the time. (*Id.* at 6-7.) In addition, Defendant argues that the backpack's contents would not inevitably have been discovered had the backpack remained in the silver Toyota at the time of his arrest, pursuant to either a search incident to arrest or an inventory search. (*Id.* at 7-8.)

### A.  *Officers' search of Defendant's backpack was constitutional because Defendant voluntarily abandoned it.*

The Fourth Amendment to the United States Constitution guarantees "the right of the people to be secure . . . against unreasonable searches and seizures." U.S. Const. amend. IV. As such, "a warrant is generally required before an officer may search or seize persons or property," including containers. *United States v. Warwick*, 928 F.3d 939, 943 (10th Cir. 2019) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)); *United States v. Donnes*, 947 F.2d 1430, 1435 (10th Cir. 1991). "The warrant requirement," however, "is subject to a few specifically established and well-delineated exceptions." *Id.* (quotation marks omitted).

One such exception is abandonment. "The Fourth Amendment permits warrantless searches and seizures of abandoned property." *United States v. Sanchez*, 983 F.3d 1151, 1161 (10th

8

Cir. 2020); *see also United States v. Juszczyk*, 844 F.3d 1213 (10th Cir. 2017) ("The Fourth Amendment does not prohibit a search of property that has been abandoned.") (quotation marks omitted); *United States v. Austin*, 66 F.3d 1115, 1118 (10th Cir. 1995) ("[A] warrantless search and seizure of abandoned property is not unreasonable under the Fourth Amendment.") (quotation marks omitted). "When individuals voluntarily abandon property, they forfeit any expectation of privacy in it they might have had."[4] *United States v. Trimble*, 986 F.2d 394, 399 (10th Cir. 1993); *United States v. Jones*, 707 F.2d 1169, 1172 (10th Cir. 1983). "[T]he burden is on the government to establish abandonment by a preponderance of the evidence."[5] *United States v. Quintana-Grijalva*, 332 F. App'x 487, 491 (10th Cir. 2009) (citing *United States v. Denny*, 441 F.3d 1220, 1226 (10th Cir. 2006)).

As the Tenth Circuit has explained, "[a]bandonment occurs if either (1) the owner subjectively intended to relinquish ownership of the property or (2) the owner lacks an objectively reasonable expectation of privacy in the property." *United States v. Easley*, 911 F.3d 1074, 1083 (10th Cir. 2018). In other words, "[e]ven where a suspect does not subjectively intend to relinquish all ownership interest in an item, such suspect may nevertheless relinquish his or her reasonable

---

[4] To fall within this exception to the warrant requirement, "[t]he owner's abandonment must be voluntary, and abandonment cannot be voluntary when it results from a violation of the Fourth Amendment." *United States v. Easley*, 911 F.3d 1074, 1083 (10th Cir. 2018). However, "[p]olice pursuit or investigation at the time of abandonment does not of itself render the abandonment involuntary." *United States v. Flynn*, 309 F.3d 736, 738 (10th Cir. 2002); *United States v. Morgan*, 936 F.2d 1561, 1570 (10th Cir. 1991); *United States v. Jones*, 707 F.2d 1169, 1172 (10th Cir. 1983). Here, Defendant does not argue that a separate Fourth Amendment violation precipitated his actions. (*See generally* Docs. 29, 35.) Rather, he argues that his actions did not constitute abandonment of his backpack.

[5] In his Motion, Defendant argues that the Government "must *clearly* show the abandonment," quoting *United States v. Calderon-Gonzales*, No. CR 12-1240 JP, 2013 WL 12330065, at *7 (D.N.M. June 27, 2013). (Doc. 29 at 5 (emphasis added).) In support of this proposition, the *Calderon-Gonzales* court cited to a single Sixth Circuit decision, *i.e.*, *United States v. Robinson*, 430 F.2d 1141, 1143 (6th Cir. 1970). *Calderon-Gonzales*, 2013 WL 12330065 at *7. *Robinson*, in turn, relied on another Sixth Circuit decision, *Coleman v. Maxwell*, 387 F.2d 134, 135 (6th Cir. 1967), and two Eighth Circuit decisions, *Friedman v. United States*, 347 F.2d 697, 704 (8th Cir. 1965), and a decision in a civil replevin action, *i.e.*, *Linscomb v. Goodyear Tire & Rubber Co.*, 199 F.2d 431, 435 (8th Cir. 1952). However, the Tenth Circuit does not appear to require a "clear[] show[ing]" of abandonment in the Fourth Amendment context. Thus, to the extent that a clear showing differs from a preponderance of the evidence, this Court will apply the latter standard in accordance with Tenth Circuit precedent.

expectation of privacy in the item." *Denny*, 441 F.3d at 1227. "Findings of subjective intent are findings of fact," while "a determination of whether the defendant retained an objectively reasonable expectation of privacy in the property that society will recognize is a question of law." *Id.* at 1227 (quoting *United States v. Garzon*, 119 F.3d 1446, 1449 (10th Cir. 1997)).

The Tenth Circuit has found property to be abandoned "where the defendant *either* (1) explicitly disclaimed an interest in the object, *or* (2) unambiguously engaged in physical conduct that constituted abandonment." *Denny*, 441 F.3d at 1227 n.6 (emphasis in original); *Garzon*, 119 F.3d at 1452 (emphasis added); *cf. United States v. Nowak*, 825 F.3d 946, 948 (8th Cir. 2016) ("We consider the dual factors of whether the defendant physically relinquished his property and whether he denied ownership of it. However, a verbal denial of ownership is not necessary for a finding of abandonment."). With respect to physical conduct, the Tenth Circuit has observed that

> [m]erely relinquishing physical control of an item is not the same as abandoning it. For example, in *Smith v. Ohio*, 494 U.S. 541, 543-44, 110 S.Ct. 1288, 108 L.Ed.2d 464 (1990) (per curiam), the Court held the defendant did not abandon his paper bag when he threw it on the hood of his car before speaking with police. Likewise, a passenger who lets a package drop to the floor of the taxicab in which he is riding can hardly be said to have abandoned it. *Rios v. United States*, 364 U.S. 253, 262 n.6, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960).

*Miller v. Bear*, 781 F. App'x 745, 752 (10th Cir. 2019) (brackets and quotation marks omitted).

Rather, when the Government seeks to show abandonment through a defendant's conduct, courts have considered a wide variety of circumstances. Broadly, courts appear to focus on factors relevant to whether the defendant, by his actions, objectively relinquished his ability to control access to the property or its contents. Thus, for example, "where a defendant places his property is relevant to the determination of whether society would recognize his or her expectation of privacy in the property as reasonable." *Denny*, 441 F.3d at 1229; *cf. Nowak*, 825 F.3d at 949 ("Whether property is discarded in a public, private, or semi-private place is a factor in considering

10

whether the property has been abandoned, but it is not dispositive."). Accordingly, the Tenth Circuit has found abandonment where, *inter alia*, a defendant's ability to recover his property from where he left it "depend[s] entirely upon fate and the absence of inquisitive (and acquisitive) passers-by." *Jones*, 707 F.2d at 1172; *see also Morgan*, 936 F.2d at 1571 (holding that defendant voluntarily abandoned his bag where his ability to recover it, "if left where it was thrown, was . . . dependent upon fate"). Courts have also considered whether the defendant left the property in someone else's care, and, if so, the defendant's relationship to that person. *See, e.g., Austin*, 66 F.3d at 1119 & n.2 (finding abandonment where defendant entrusted his bag to "a stranger," "without any conditions or agreements"); *Morgan*, 936 F.2d at 1570-71 (noting that defendant did not leave his property "to the care or responsibility of another" in finding abandonment); *see also Juszczyk*, 844 F.3d at 1214-15 (noting that defendant was "not close" to the homeowner on whose roof he threw his backpack in finding abandonment).

Although the precise circumstances of each case are of course unique, the Court finds instructive other cases in which the Tenth Circuit has considered whether the defendant unambiguously engaged in physical conduct constituting abandonment under the Fourth Amendment. *Inter alia*, the Tenth Circuit has found abandonment where the defendant voluntarily dropped his trench coat in a parking lot while fleeing police, *Sanchez*, 983 F.3d at 1161–62; where the defendant tried to conceal his backpack from police by throwing it onto the roof of an acquaintance's house, *Juszczyk*, 844 F.3d at 1213-15; where the defendant's passenger opened the car door and dropped a sack at the top of an exit ramp while trying to avoid a fictitious drug checkpoint, *Flynn*, 309 F.3d at 737; where the defendant left his bag with a stranger at an airport, *Austin*, 66 F.3d at 1117-19; and, where the defendant threw his gym bag to one side of the back porch of an acquaintance's house and moved away from the bag and towards the officer pursuing

him. *Morgan*, 936 F.2d at 1568-71; *see also Garzon*, 119 F.3d at 1450 ("clear and unequivocal physical acts" of abandonment include throwing an object away, giving it to a stranger, and "leaving [it] unguarded on public property"). Conversely, the Tenth Circuit has held that the defendant did not abandon two backpacks he left on a bus during a layover, "in a secure overhead internal luggage rack just as he was told he could by the bus driver." *Garzon*, 119 F.3d at 1450.

Other courts' decisions on this issue are also informative. For example, the Eighth Circuit found that the defendant abandoned his backpack "when he fled the scene of [a] traffic stop, leaving the backpack behind in [a friend's] car." *Nowak*, 825 F.3d at 947, 948-49. The Eleventh Circuit held that the defendant abandoned his backpack when he hid it under the porch of another person's house and lied to officers about where it was. *United States v. Witten*, 649 F. App'x 880, 885 (11th Cir. 2016). And the United States District Court for the District of Kansas held that the defendant abandoned a pouch when he threw it "onto [the rooftop of] a random building," because "any expectation of privacy was not objectively reasonable." *United States v. Gaines*, 405 F. Supp. 3d 1039, 1048 (D. Kan. 2019). Conversely, the Seventh Circuit found that the defendant did not abandon his "locked briefcase" when he "entrusted" it to "a life long friend" to hide in the friend's "locked barn, surrounded by a locked gate, in a remote part of Wisconsin." *United States v. Basinski*, 226 F.3d 829, 836-38 (7th Cir. 2000).

Perhaps most similar to the present matter is *United States v. Hayes*, in which the Second Circuit affirmed the district court's conclusion that the defendant abandoned his bag by throwing it "into the bushes at the edge of his property," without "locking it or taking other affirmative steps to protect it from passersby and animals."[6] 551 F.3d 138, 143 (2d Cir. 2008). "Although . . . the

---

[6] In *Hayes*, the district court found that the defendant's bag was thrown "to the edge of [the defendant's] lot; in fact, it may have even landed on his neighbor's property." 551 F.3d at 143. A police dog found the bag in a "brush line or hedgerow located on the left side of [the defendant's] property . . . approximately 65 feet from the back door of the residence." *Id.* at 142 (quotation marks omitted).

12

bag itself may have been naturally shielded from view by vegetation, the general area where the bag was found was visible from the street." *Id.* at 149 (brackets and quotation marks omitted). According to the Second Circuit, "because . . . there was no expectation of privacy associated with the non-curtilage area where the black bag was discovered, there was similarly no expectation of privacy as to the bag and its contents." *Id.*

Viewing the proposed findings of fact set forth above in light of the foregoing authority, the Government has shown by a preponderance of the evidence that Defendant voluntarily abandoned his backpack when he threw it into the bushes at 1613 University Boulevard, Northeast, and then got into a car and rode away, leaving the backpack behind. The Court has considered the totality of the circumstances, and particularly notes the following. Defendant discarded the backpack during regular business hours in a parking lot fully accessible to the public, on a busy street in the middle of a populous city. His actions were visible to persons driving, walking, and parked in the vicinity (including Detective Yurcisin), and the backpack was visible to persons standing beside the bushes where he left it (including Detective Nakamura). Defendant had no association with or control over the premises where he left the backpack; he left no one behind to watch over it; and, it was not locked or secured in any way. The bushes were its sole protection from "inquisitive (and acquisitive) passers-by," and they were scant protection indeed given that the backpack was sitting on top of them. *Jones*, 707 F.2d at 1172. Although Defendant probably hoped to come back for the backpack later, any expectation that it would remain undisturbed where he left it was objectively unreasonable. In these circumstances, Defendant lacked any "objectively reasonable expectation of privacy in [the backpack] that society will recognize." *Denny*, 441 F.3d at 1227.

In his Motion and reply, Defendant argues that he did not abandon the backpack because he did not verbally disclaim an interest in it before police seized and searched it.[7] (Doc. 29 at 4-6; Doc. 35 at 2-3.) However, the law is clear that the Government can show abandonment by *either* words *or* actions. *Denny*, 441 F.3d at 1227 n.6; *Garzon*, 119 F.3d at 1452. Though some courts, as in *Jones*, 707 F.2d at 1172-73, have found abandonment based on the defendant's words and actions together, many others have found abandonment based on actions alone. *See, e.g.*, *Sanchez*, 983 F.3d at 1161-62; *Juszczyk*, 844 F.3d at 1213-15; *Hayes,* 551 F.3d at 143, 149; *Flynn*, 309 F.3d at 737-39; *Morgan*, 936 F.2d at 1570-71; *Nowak*, 825 F.3d at 947-49; *Gaines*, 405 F. Supp. 3d at 1048. Likewise, here, the Government has shown abandonment by a preponderance of the evidence based on Defendant's unambiguous actions.

Defendant also argues that he did not abandon the backpack because he tried to hide it so that he could come back for it later.[8] (Doc. 35 at 3-5.) However, *Juszczyk*, *Witten*, and *Hayes* show that efforts to conceal property do not necessarily preclude a finding of abandonment. In *Juszczyk*, the defendant tried to conceal his backpack on an acquaintance's roof. 844 F.3d at 1213-14. In *Witten*, the defendant tried to hide his backpack under someone's porch. 649 F. App'x at 885. In *Hayes*, the defendant's bag was likely "shielded from view by vegetation." 551 F.3d at 149. Nevertheless, in each of these cases, the court found that the defendant had abandoned the property at issue. *See also Denny*, 441 F.3d at 1226-28 (defendant abandoned plastic bag when he hid it underneath sleeper car seat and then disclaimed ownership and denied knowledge of it).

---

[7] After Detective Nakamura had already searched the backpack, Defendant told Officer Santana that he left the backpack in the bushes "to get rid of it," which indicates a subjective intent to abandon it. (Doc. 40, Ex. 5.) However, because Defendant did not make this statement until after the challenged search, the Court does not rely on it.

[8] Though Defendant characterizes his efforts to hide the backpack as "successful," (*see, e.g.*, Doc. 35 at 4), plainly they were not, because police were able to retrieve the backpack quickly and easily without his assistance.

Nor does a defendant's hope that he might later return to retrieve his property preclude a finding of abandonment, where the defendant's words and/or actions show that his expectation of privacy is objectively unreasonable. *See, e.g., Austin*, 66 F.3d at 1118-19 (defendant did not retain legitimate expectation of privacy in bag he "clearly intended to return and retrieve"); *Jones*, 707 F.2d at 1172 (defendant abandoned satchel even though "he may have hoped that the police would not find it and that he could later retrieve it"). Under the circumstances presented here, Defendant's purported attempt to conceal his backpack in the bushes and his apparent "hope[] . . . that he could later retrieve it," *Jones*, 707 F.2d at 1172, are wholly inadequate to confer "an objectively reasonable expectation of privacy in the [backpack] that society will recognize." *Denny*, 441 F.3d at 1227.

At the evidentiary hearing, defense counsel made the additional argument that Defendant did not unambiguously abandon his backpack because there were other places he could have left it, such as a dumpster or a trash can, that would have more clearly demonstrated an intent to discard it. However, the cases already discussed make clear that a defendant can unambiguously abandon an item in places other than trash receptacles. Likewise unavailing is defense counsel's argument, at the hearing, that Defendant's conduct was ambiguous because he could have been leaving the backpack for someone at Camp Fire New Mexico to retrieve. Initially, this argument is based on pure speculation, and improbable speculation at that. Logically, if one is trying to deliver valuable property to someone, one does not simply throw it into the bushes in the parking lot of the recipient's urban workplace and leave. Further, even if that was Defendant's subjective intent, he still lacked an objectively reasonable expectation of privacy in the backpack once he left it where and how he did, for the reasons already discussed.[9] Thus, the Court proposes to find that the

---

[9] Relatedly, defense counsel suggests that Defendant lacked the usual motivation to abandon valuable contraband because there was no evidence to show that he knew police were following him. According to defense counsel, this

Government has shown by a preponderance of the evidence that Defendant voluntarily abandoned his backpack before officers seized and searched it, and their warrantless seizure and search of the backpack therefore complied with the Fourth Amendment. The Court recommends that Defendant's Motion be denied on this basis.

### B. The Court need not address the Government's remaining arguments against suppression.

Because the Court recommends denial of Defendant's Motion on the basis that Defendant abandoned his backpack before police officers seized and searched it, the Court need not consider the Government's other arguments in opposition to the Motion, *i.e.*, that (1) officers seized and searched Defendant's backpack in good faith because they reasonably believed he had abandoned it, and (2) the backpack's contents would have inevitably been discovered in the course of Defendant's arrest. (Doc. 31 at 14-18.)

### IV. Conclusion

For all of the above reasons, the Court recommends that Defendant Esteban Gallardo's Motion to Suppress (Doc. 29) be DENIED.

The parties are notified that within fourteen (14) days of service of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Criminal Procedure 59(b). A party must file any objections with the Clerk of the District Court within the fourteen-day period

---

distinguishes the present matter from most of the cases finding abandonment. The Court notes that there is in fact evidence to show that Defendant believed police might be following him, most particularly Ms. Casaus' statement to Officer Santana that he thought maybe police were following him because of her car, which she had previously reported stolen. (Doc. 40, Ex. 4.) However, what Defendant believed or suspected is superfluous because, regardless of his subjective motivation or intent, he lacked an objectively reasonable expectation of privacy in the backpack after he threw it into bushes wholly accessible to passersby and left it behind without taking any steps to secure it.

if that party wants the assigned district judge to review the proposed findings and recommended disposition. If no objections are filed, no review will be allowed.

_____
KIRTAN KHALSA
UNITED STATES MAGISTRATE JUDGE